MARK H. COHEN, United States District Judge
This matter is before the Court on Defendants' Motion for Reconsideration [Doc. 51] ("Mot. for Recons."), and Motion for Certification and Stay Pending Appeal [Doc. 57] ("Mot. for Interlocutory Appeal"). Defendants' Motion for Reconsideration focuses on four aspects of this Court's analysis of scienter in its Order dated March 29, 2018 [Doc. 43] (the "March 29 Order"). In the event the Court denies or otherwise declines to rule on Defendants' Motion for Reconsideration, Defendants also have moved the Court to certify this case for interlocutory appeal.
I. THE MARCH 29 ORDER[1]
In the March 29 Order, this Court granted in part Defendants' Motion to Dismiss, finding, inter alia , that eleven of the thirty-seven statements upon which Plaintiffs' claims are based (Statement Nos. 1-2, 4, 7, 13, 21-22, 27, 32, 34, and 36) are forward-looking statements accompanied by sufficient cautionary language so that they are protected by the Private Securities Litigation Reform Act ("PSLRA") safe harbor provision and not actionable as a matter of law. March 29 Order at 15-50 (citing 15 U.S.C. § 78u-5(c) ). With regard to the remaining twenty-six statements identified in the Complaint, Defendants made the following six discrete arguments attacking the sufficiency of elements of Plaintiffs' allegations of scienter: (1) Plaintiffs' motive allegations are implausible, (2) the absence of insider stock sales allegations undercuts an inference of scienter, (3) Plaintiffs' "positions and responsibilities" allegations do not support scienter, (4) Plaintiffs' witness allegations are not credible or sufficient to support scienter, (5) Plaintiffs' allegations of Defendants' directives regarding public communications did not support scienter, and (6) allegations related to post-class events did not *1319 support scienter.[2] See Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss [Doc. 37-1] ("Defs.' MTD Br.").
Because it bears directly on Defendants' Motion for Reconsideration, it is important to note what Defendants did not argue in their motion to dismiss:
• Defendants never argued that Plaintiffs failed to sufficiently allege facts supporting a strong inference of scienter for each defendant with respect to each statement.[3] See Mot. for Recons. at 3.
• Defendants never argued that Plaintiffs' reliance on allegations relating to positions and responsibilities were insufficient as a matter of law because Plaintiffs failed to include "specific details of first-hand interactions with a defendant in which they advised him that existing facts contradicted his public disclosures." See id. at 4-5.
• Defendants never argued that Plaintiffs' reliance on allegations relating to positions and responsibilities were insufficient as a matter of law because Plaintiffs failed to allege that these Defendants understood that those issues rendered the May 2014 COD unachievable at the time of each challenged statement. See id. at 5-6, 8-9.
• Defendants never argued, or presented a chart purporting to demonstrate, that Plaintiffs failed to allege particularized facts connecting the allegations of scienter associated with individual defendants to particular statements at the time those statements were made. See id. at 6-7.
• Defendants never argued that a more plausible alternative inference to draw from the alleged facts regarding the scheduling delays was that the individual defendants believed the delays could be overcome. See id. at 9-10.
• Defendants never argued that Plaintiffs' motive allegations were too generalized to establish scienter. See id. at 21-22.
• Defendants never argued that Plaintiffs' motive allegations are not probative of scienter because they do not demonstrate any personal benefit to the individual Defendants. See id. at 22-23.
• Defendants never argued that Plaintiffs' scienter allegations against the Southern Company were insufficient. See id. at 23-25.[4]
*1320 In the March 29 Order, the Court addressed the arguments Defendants did raise in their Motion to Dismiss and found that Plaintiffs' motive allegations were "logical, plausible, and support an inference of scienter." March 29 Order at 63. With regard to Defendants' argument that the absence of insider trading allegations undercuts an inference of scienter, the Court found that the absence of such allegations in this case, considering the facts alleged collectively, was not dispositive and did not preclude an inference of scienter. Id. at 64-66. The Court thoroughly examined Plaintiffs' allegations regarding the individual defendants' positions, responsibilities, and access to information allegations and found that, accepting the allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the allegations supported an inference of scienter as to Defendants Day, Anderson, and Huggins, but did not support an inference of scienter as to Defendants Holland, Fanning, and Beattie. Id. at 67-81. The Court rejected Defendants' argument that the witness accounts alleged in the Complaint were not credible and considered them as a part of the cumulative view of all of the allegations and inferences in its analysis of scienter. Id. at 81-83. Accepting Plaintiffs' allegations as true and drawing reasonable inferences in Plaintiffs' favor, the Court also found that the evidence that Defendant Day gave directives limiting public communication supported an inference of scienter. Id. at 83-84.
The Court then summarized its findings with regard to scienter as follows:
This Court concludes that the allegations in Plaintiffs' Complaint create a strong inference (i.e. a cogent and compelling one) that the certain individual Defendants orchestrated the fraud, knew about it, or were severely reckless in not knowing about it. Taking the well-pleaded allegations and reasonable inferences drawn from those allegations as true, and viewing them collectively, this Court concludes that Plaintiffs have adequately pleaded a strong inference of scienter as to Defendants Day, Huggins, and Anderson. The allegations in the Complaint do not support a strong inference of scienter as to Defendants Fanning, Beattie, and Holland, who are DISMISSED as individual Defendants.
Id. at 84-85.[5] The Court viewed all of the allegations and reasonable inferences drawn from those inferences collectively in a light most favorable to Plaintiffs. No one factor was dispositive and the Court was careful to weigh the fact that there was an absence of insider trading allegations (the only adverse inference Defendants referenced in their briefing) against a finding of scienter.
It is this Court's analysis of scienter that is the subject of Defendants' Motion for Reconsideration. Specifically, Defendants contend that the Court erred in its application of the scienter standard in the following four respects:
(1) The Court erred in failing to require a strong inference of scienter with regard to each statement as to each defendant.
(2) The Court's Defendant-by-Defendant analysis erred in holding that Day's, Anderson's, and Huggins's positions, responsibilities and access to information *1321 established severe recklessness.
(3) The Court erred in finding that allegations of motive were probative of scienter.
(4) Plaintiffs failed to meet the pleading requirements for alleging scienter against Southern.
See Defs.' Mem. of Law in Supp. of Defs.' Mot. for Recons. [Doc. 51-1] ("Defs.' Recons. Br.").
Alternatively, if the Court decides against Defendants on their Motion for Reconsideration, Defendants have moved for a certification for interlocutory appeal on the following two questions:
(1) Whether this Circuit's requirement that a "complaint allege facts supporting a strong inference of scienter 'for each defendant with respect to each violation' " requires a plaintiff to plead scienter as to each allegedly false or misleading statement. Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1238 (11th Cir. 2008) (quoting Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir. 2004) ).
(2) Whether, after the enactment of the Private Securities Litigation Reform Act ("PSLRA"), plaintiffs may satisfy the requirements for pleading corporate scienter based on the group pleading doctrine.[6]
Mot. for Interlocutory Appeal at 2.
II. MOTION FOR RECONSIDERATION
A. Legal Standard
"The Court does not reconsider its orders as a matter of routine practice." Belmont Holdings Corp. v. SunTrust Banks, Inc., 896 F.Supp.2d 1210, 1223 (N.D. Ga. 2012) (citing LR 7.2E, NDGa.). Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but only when "absolutely necessary." LR 7.2E, NDGa. Such absolute necessity arises only when there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F.Supp.2d 1256, 1258-59 (N.D. Ga. 2003) (citation omitted). A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Id. at 1259. Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Comput. Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001). Finally, "[a] motion for reconsideration is not an opportunity for the moving party ... to instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F.Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996). "If a party presents a motion for reconsideration under any of these circumstances, the motion must be denied." Bryan, 246 F.Supp.2d at 1259 ; see also Brogdon ex rel. Cline v. Nat'l Healthcare Corp., 103 F.Supp.2d 1322, 1338 (N.D. Ga. 2000).
B. Analysis
Defendants have failed to meet the legal standard for reconsideration. The arguments made by Defendants are either *1322 new arguments raised for the first time in their Motion for Reconsideration, or are a rehash of old arguments already made and rejected by this Court. "Parties therefore may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." Brogdon, 103 F.Supp.2d at 1338. The Court will briefly address each of Defendants' arguments seriatim.
1. Strong Inference of Scienter Required as to Each Statement[7]
Defendants first argue that the "Court erred in failing to require Plaintiffs to establish scienter with respect to each statement." Defs.' Recons. Br. at 3-11. Defendants primarily rely on language from two cases: Mizzaro, 544 F.3d at 1238 ("[T]he complaint must allege facts supporting a strong inference of scienter 'for each defendant with respect to each violation.' ") (quoting Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir. 2004) ), and Findwhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) ("Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute."). Although Defendants' citations articulate a correct statement of the law, Defendants' argument was not raised in their original Motion to Dismiss, nor did they cite the language they now reference in their Motion for Reconsideration.[8] It is not appropriate to raise a new argument in a motion for reconsideration. See Brogdon, 103 F. Supp. 2d at 1338.
It is not the role of the Court to make arguments for the parties but to consider and decide the specific arguments made by the parties. See Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011) ("To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties.") (citation omitted). Nevertheless, even if the argument had been raised previously, there is no "clear error of law or fact" that would justify granting Defendants' Motion for Reconsideration. The Court thoroughly analyzed the allegations in the Complaint as to each individual defendant and found that, viewed collectively, there are sufficient allegations of fact to support the strong inference of scienter as to Defendants Day, Huggins, and Anderson. The result is the same when the Court focuses on the statements at issue in this case that are attributed to those individuals. The two statements attributed to Defendant Day were made on February 28 and May 10, 2013. See Statements 24 and 28, Appendix A [Doc. 37-2]. All of the allegations which support a strong inference of scienter as to Defendant Day apply equally to each statement. Similarly, the allegations which support a strong inference of scienter as to Huggins and Anderson are applicable to (1) the statement attributed to Huggins on September 12, 2013, and (2)
*1323 the statements attributed to Anderson on September 13, October 19, November 13, 2012, and January 9, 2013. See id., Statements 37, 9, 11, 14, and 18.
Defendants also argue that when litigants such as Plaintiffs rely on position, responsibilities, and access allegations, the Eleventh Circuit's scienter standard requires "specific details of first-hand interactions with a defendant in which they advised him that existing facts contradicted his public disclosures." Defs.' Recons. Br. at 4-5 (citing Mogensen v. Body Cent. Corp., 15 F.Supp.3d 1191, 1220 (M.D. Fla. 2014) ). This argument was not made by Defendants in their briefing of the Motion to Dismiss.
Even if Defendants had raised this argument in their Motion to Dismiss, Defendants' argument would fail because it does not articulate a clear error of law that would support the grant of Defendants' Motion for Reconsideration. Mogensen is not controlling law and does not stand for the proposition that the scienter standard requires Plaintiffs to plead "specific details of first-hand interactions with a defendant in which they advised him that existing facts contradicted his public disclosures." See Defs.' Recons. Br. at 4-5 (citing Mogensen, 15 F.Supp.3d at 1220 ). A review of that case reveals that the quote was taken out of context. First, the language quoted in Mogensen relates specifically to the issue of scienter based upon the allegations of confidential witnesses, and is not related to allegations of "position, responsibilities, and access to information." Mogensen, 15 F.Supp.3d at 1220. Second, the Mogensen court did not hold that "specific details of first-hand interactions" must be pled in order to sufficiently allege scienter; instead the language cited was just an example of evidence that could establish scienter. Id. The Mogensen court expressed the skepticism with which it and other courts view confidential witness allegations "who, from behind the veil of anonymity, provide only non-specific descriptions of meetings and internal documents." Id. The court then provided examples of how this skepticism of confidential witness allegations can be overcome and the language cited by Defendants was provided as one of the examples. Id. ("Similarly, courts will find a strong inference of scienter when confidential witnesses point to the specific details of first-hand interactions with a defendant in which they advised him that existing facts contradicted his public disclosures-especially when the defendant admits as much in his responses to the witnesses.").[9]
Defendants argue further that, regardless of whether Defendants Day, Anderson and Huggins observed the Kemper Plant and knew generally that there were delays, Plaintiffs have not alleged that they "understood (or were severely reckless in not understanding) that those issues rendered the May 2014 COD unachievable at the time of each challenged statement." Defs.' Recons. Br. at 6. Essentially, Defendants argue that, even accepting the fact that they may have known generally about construction delays and a lack of progress, the allegations are insufficient to show a strong inference of scienter because there is no accompanying allegation *1324 that the impact of the delays was explained to defendants (i.e. , that the May 2014 COD was unachievable). This argument was not made by Defendants in their briefing of their Motion to Dismiss.
Notwithstanding Defendants' failure to raise this argument in their Motion to Dismiss, the Court finds the argument to be unavailing. First, a logical inference to draw from the delays would be that the project was not "on schedule" which, of course, is inconsistent with many of the statements made by Defendants at issue in this case. See e.g., Statements Nos. 5-6, 10, 25-26, 29-31 ("Project is on schedule."). Moreover, drawing all reasonable inferences in favor of Plaintiffs as is required on a motion to dismiss, the most logical conclusion one can draw from the allegations of observations of delays and a general lack of progress is that the ultimate deadline (May 2014 COD) would not be met. But one need not rely on inferences as the Complaint specifically alleges that Defendants were made aware of the consequences of all of the delays. The Complaint alleges that in the June 2012 time-frame during monthly meetings:
This gasifier delay lasted from February 2012 until approximately August 2012. Wingo said that as soon as he learned in February 2012 that there were refractory failures on the gasifier, he knew that there was "no way in hell" that Southern Company could meet the May 2014 deadline. During 2012, Wingo expressed this view to his supervisor, Brett Wingard, and to other engineers. According to Wingo, Coy Graham, an Assistant Construction Site Manager over the gasifier, wrote a June 2012 email chain including his supervisor, David Empfield, advising that the gasifier component delivery was so critical to the schedule the gasifier delays they were facing would ultimately amount to a six-month delay to the total project schedule. Wingo said that the gasifier delays and their impact on the overall schedule were discussed during this time during monthly production meetings, which Wingo usually attended. John Huggins, who was in charge of Startup at the time, attended these production meetings and would have been aware of the gasifier delays. Ashley Baker (Southern Company) and Aaron Abramowitz (Mississippi Power) also regularly attended these meetings, Wingo said that Mississippi Power Vice President Tommy Anderson occasionally attended these monthly production meetings. Wingo also spoke with Anderson on an almost weekly basis, either over the phone or in person, because Anderson needed to approve all procurement purchases during the late 2011 through 2012 timeframe. Therefore, Anderson would have been well aware of the implications of the gasifier delay. Wingo concluded: "[W]e lost somewhere between three and six months on the overall schedule and yet even through 2012 when we had a three to six month delay on the gasifier, we did not report a slip in our May 1, 2014 COD. That's when I was pretty certain that we had something terribly wrong with our scheduling."
Compl. ¶ 61 (emphasis added).
Accordingly, the Court DENIES Defendants' Motion for Reconsideration based on the argument that the Court failed to require Plaintiffs to establish scienter with respect to each statement.
2. Positions, Responsibilities, and Access to Information Allegations
Defendants argue that the Court erred in holding that the allegations of Defendants Day, Anderson and Huggins's positions, responsibilities, and access to information established the requisite level of *1325 scienter. Defs.' Recons. Br. at 11-21. Defendants have repackaged a two-sentence argument from their Motion to Dismiss with ten pages of record cites they failed to present in that motion. See Defs.' MTD Br. at 28. Defendants' argument fails because it is based on a false premise and fails to identify a clear error of law made in the Court's March 29 Order. See Brogdon, 103 F.Supp.2d at 1338.
Defendants' argument is based on the false premise that the Court relied exclusively on the positions, responsibilities, and access to information allegations in finding that scienter was sufficiently alleged as to these three individuals.[10] As explained above, this is not accurate. In reaching the conclusion that Plaintiffs pled the requisite level of scienter as to Defendants Day, Anderson and Huggins, the Court viewed all of the allegations and reasonable inferences drawn from those inferences collectively in a light most favorable to Plaintiffs, not just the allegations concerning positions, responsibilities, and access to information. No one factor was dispositive and the Court was careful to weigh the fact that there was an absence of insider trading allegations against a finding of scienter.
To the extent Defendants are arguing based on the erroneous presumption that the Court relied exclusively on the positions, responsibilities, and access to information allegations, Defendants' argument fails. To the extent Defendants are arguing that the Court found that the positions, responsibilities, and access to information allegations against Defendants Day, Anderson and Huggins are not probative of scienter, this is simply an attempt to restate an argument that Defendants previously made and this Court rejected. Defendants have not shown any clear error of law. Accordingly, the Court DENIES Defendants' Motion for Reconsideration based on the argument that the Court erred in holding that the positions, responsibilities, and access to information allegations established scienter.
3. Allegations of Motive
Defendants argue that the Court erred in finding that Plaintiffs' allegations of financial motive were probative of scienter because these allegations are too generalized to establish scienter as to any Defendant and are insufficient without an additional allegation showing a "concrete and personal benefit to the individual defendants." Defs.' Recons. Br. at 21-23. This argument was not raised in Defendants' Motion to Dismiss. See Brogdon, 103 F.Supp.2d at 1338. In the Motion to Dismiss, Defendants' argument was more limited; they argued that the motive allegations were "implausible" and "illogical." See Defs.' MTD Br. at 25-27.
Nevertheless, Defendants' argument fails. None of the cases relied upon by Defendants stand for the proposition that allegations of motive cannot as a matter of law be probative of scienter. Instead, the *1326 language cited by Defendants detail findings in particular cases that the motive allegations (frequently, standing alone) are insufficient to support a strong inference of scienter. See In re HomeBanc Corp. Sec. Litig., 706 F.Supp.2d 1336, 1359 (N.D. Ga. 2010) ("The fact that Defendants did not take advantage of the purportedly inflated price to sell their holdings overwhelms the inference that they were knowingly withholding from the public damaging and material information about HomeBanc."); City of Pompano Beach Gen. Emps.' Ret. Sys. v. Synovus Fin. Corp., 1:09-CV-01811-JOF, 2011 WL 13130185, at *26 (N.D. Ga. May 19, 2011) ("Courts have held that it is not sufficient for plaintiffs to claim that defendants engaged in a conspiracy to commit securities fraud in order to inflate the price of the company's stock to allow for successful stock offerings, to protect their own executive positions, or to enhance the value of their personal stock holding in the company."); Carpenters Health & Welfare Fund of Phila. v. Coca-Cola Co., 1:00-CV-02838-WBH, 2002 WL 34089163, at *15 (N.D. Ga. Aug. 20, 2002) ("[A]llegations of motives possessed by virtually all corporate insiders are generally not sufficient.").[11]
Motive can be probative of scienter. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 310, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("The Court agrees that motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference. The absence of a motive allegation, however, is not fatal for allegations must be considered collectively; the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the complaint's entirety."). In fact, Defendants acknowledge that motive allegations, although not dispositive, can be probative of scienter. Defs.' Reply Br. at 12-13 ("[A]llegations of motive and opportunity alone are insufficient to plead scienter in the Eleventh Circuit.").
The Court correctly held that the five financial motives in this case, although not dispositive, were probative of scienter. The Court DENIES Defendants' Motion for Reconsideration based on the argument that financial motives were not probative of scienter.
4. Allegations of Scienter Against Southern
Defendants argue that "the Court erred in failing to consider whether Plaintiffs pled scienter as to Southern," and that "[f]or Southern to remain a defendant, Plaintiffs must also plead scienter as to it." Defs.' Recons. Br. at 23. This argument was not raised in Defendants' Motion to Dismiss. Defendants claimed at the oral argument that the issue was raised in the final footnote of their Motion to Dismiss, which states as follows: "Plaintiffs have not adequately pled scienter for any Individual Defendant. Accordingly, they have not pled scienter for Southern." Defs.' MTD Br. at 35, n.9.
While footnote nine is a generic scienter argument related to Southern, it is far from the argument Defendants now are making in their Motion for Reconsideration. A motion for reconsideration is not "a vehicle to present new arguments or evidence that should have been raised earlier." Brogdon, 103 F.Supp.2d at 1338 ;
*1327 Aldridge v. Travelers Home & Marine Ins. Co., No. 1:16-CV-1247-SCJ, 2017 WL 5476780, at *1 (N.D. Ga. Mar. 27, 2017) ("[M]otions for reconsideration are not 'do-overs' whereby Plaintiffs can present law and facts that they should have submitted in their initial briefs.").
The Court DENIES Defendants' Motion for Reconsideration based on the proposition that the Court erred by failing to consider an argument that was never presented.
III. MOTION FOR INTERLOCUTORY APPEAL
A. Legal Standard
Certification under 28 U.S.C. § 1292(b) (2012) is an extraordinary measure that is permitted only in exceptional circumstances. McFarlin v. Conseco Serv., LLC, 381 F.3d 1251, 1256 (11th Cir. 2004). Under § 1292(b), a Court of Appeals may consider whether to permit an interlocutory appeal only after a district judge certifies in writing that the issue presented from the non-final order in question: (1) is a pure question of law, (2) is "controlling of at least a substantial part of the case," (3) was specified by the district court in its order, (4) "there are substantial grounds for difference of opinion" on the issue, and (5) "resolution may well substantially reduce the amount of litigation necessary on remand." Mamani v. Berzain, 825 F.3d 1304, 1312 (11th Cir. 2016), cert. denied sub nom., Lozada Sanchez Bustamante v. Mamani, --- U.S. ----, 137 S.Ct. 1579, 197 L.Ed.2d 705 (2017) (quoting McFarlin, 381 F.3d at 1264 (11th Cir. 2004) ); see also Rindfleisch v. Gentiva Health Servs., Inc., 24 F.Supp.3d 1234, 1236-37 (N.D. Ga. 2013). The movant bears the burden to "make the showings necessary to establish a right to interlocutory appeal." CSX Transp., Inc. v. Kissimmee Util. Auth., 153 F.3d 1283, 1286 (11th Cir. 1998) ; see also McFarlin, 381 F.3d at 1264.
Interlocutory appeals under 28 U.S.C. § 1292(b)"were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." McFarlin, 381 F.3d at 1259. Indeed, the Supreme Court has instructed that an appeal gives the higher court "a power of review, not one of intervention." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Section 1292 disallows appeals "from any decision which is tentative, informal or incomplete" or on any matter that "remains open, unfinished or inconclusive." Id.
In McFarlin, the Eleventh Circuit explained that a "controlling question of law" as contemplated by § 1292(b) is
a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine .... The term "question of law" does not mean the application of settled law to fact. It does not mean any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact. Instead, what the framers of § 1292(b) had in mind is more of an abstract legal issue or what might be called one of "pure" law, matters the court of appeals "can decide quickly and cleanly without having to study the record."
McFarlin, 381 F.3d at 1258 (quoting Ahrenholz v. Bd. of Trustees of the Univ. of Illinois, 219 F.3d 674, 676-77 (7th Cir. 2000) ) (internal citations omitted). Accordingly, "[t]he antithesis of a proper § 1292(b) appeal is one that turns on ... whether the district court properly applied settled law to the facts or evidence of a particular case." Id., 381 F.3d at 1259.
*1328 A "substantial ground for difference of opinion" may exist where "the issue is difficult and of first impression, a difference of opinion as to the issue exists within the controlling circuit, or the circuits are split on the issue." United States ex rel. Powell v. Am. InterContinental Univ., Inc., 756 F.Supp.2d 1374, 1378-79 (N.D. Ga. 2010) (citation omitted). The Eleventh Circuit has held that a question of law as to which the appeals court is in "complete and unequivocal" agreement with the district court is not a proper one for § 1292(b) review. McFarlin, 381 F.3d at 1258 (quoting Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 788-89 (11th Cir. 1992) ). "Neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion." Powell, 756 F.Supp.2d at 1379 (citing In re Scientific-Atlanta, Inc. Sec. Litig., No. 1:01-CV-1950-RWS, 2003 WL 25740734, at *1 (N.D. Ga. Apr. 15, 2003) ).
In determining whether an immediate appeal will "materially advance the ultimate termination of the litigation," the Court considers the extent to which additional time and expense may be saved by the appeal and whether resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation. McFarlin, 381 F.3d at 1259 ; see also Dimuccio v. D'Ambra, 779 F.Supp. 1318, 1324 (M.D. Fla. 1991) (indicating that the court should assess "the extent to which additional time and expense may be saved by the appeal.").
B. Analysis
Defendants have moved for a certification for interlocutory appeal on the following question:
Whether this Circuit's requirement that a "complaint allege facts supporting a strong inference of scienter 'for each defendant with respect to each violation' " requires a plaintiff to plead scienter as to each allegedly false or misleading statement. Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1238 (11th Cir. 2008) (quoting Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir. 2004) ).
Mot. for Interlocutory Appeal at 1. Defendants urge certification and assert that all requirements are met except for the third element, the requirement that the issue was specified by the district court in its order. See Mot. for Interlocutory Appeal at 3 ("Defendants respectfully request that this Court satisfy the third requirement by amending its March 29, 2018 Order to specify the certified issues.").
Defendants tacit admission is fatal to their motion. By admitting that the Court needs to amend the March 29 Order to satisfy the third element, Defendants highlight the fact that this issue was never raised by Defendants and, consequently, never ruled upon by the Court. As discussed above, Defendants never argued that Plaintiffs scienter allegations were insufficient because they failed to allege scienter for each Defendant as to each statement. Defendants never even cited the language they now rely upon.
Assuming arguendo that this issue meets the other requirements for an interlocutory appeal under § 1292(b),[12] Defendants have failed to meet their burden to show that the issue was relied upon by the district court in the March 29 Order. Defendants' issue was not specifically addressed because Defendants never raised *1329 it. It is inappropriate to permit interlocutory review here given that the issue was never raised or addressed in Defendants' Motion to Dismiss.
To prevail on a particular theory of liability, a party must present that argument to the district court. See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding that the plaintiffs abandoned a claim because they did not present the argument to the district court). Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").
Fils, 647 F.3d at 1284 ; see also Mamani, 825 F.3d at 1313 n.4 (declining to certify an issue for interlocutory appeal, noting that the issue was not raised by the movants in the underlying motion to dismiss).
For these reasons, the Court concludes that Defendants have not shown that exceptional circumstances exist to warrant certifying the March 29 Order for interlocutory appeal. Accordingly, the Court DENIES Defendants' Motion for Certification for Interlocutory Appeal.
IV. CONCLUSION
Accordingly, it is hereby ORDERED that Defendants' Motion for Reconsideration [Doc. 51] and Motion for Certification and Stay Pending Appeal [Doc. 57] are DENIED.[13]
IT IS SO ORDERED this 10th day of August, 2018.

The Court hereby incorporates by reference the factual background from the March 29 Order, which is not disputed by the parties. This includes the reliance on the index of statements submitted by Defendants [Doc. 37-2]. As it did in the March 29 Order, the Court will refer to the statements at issue as they are numbered in Defendants' appendix. See March 29 Order at 5 n. 3.

Plaintiffs did not respond to this final argument related to post-class period events. Because it did not appear that Plaintiffs were relying on post-class period events to support their scienter argument, the Court did not address the argument.

At the hearing on Defendants' Motion for Reconsideration held on July 31, 2018, counsel for Defendants stated that Defendants made this argument in conjunction with their Motion to Dismiss "through the reference to the Mizzaro [v. Home Depot, Inc., 544 F.3d 1230 (11th Cir. 2008) ] case." Presumably, counsel meant that by citing Mizzaro, Defendants incorporated into their motion to dismiss any argument addressed in that opinion. Mere citation to a case is not the equivalent of making a legal argument, especially in a situation where Defendants did not articulate this argument nor cite the language from Mizzaro that they rely upon, for the first time, in their Motion for Reconsideration.

At oral argument, counsel for Defendants cited footnote nine of their initial Motion to Dismiss brief as the instance in which they previously made this argument. In its entirety, footnote nine states: "Plaintiffs have not adequately pled scienter for any Individual Defendant. Accordingly, they have not pled scienter for Southern." Defs.' MTD Br. at 35, n.9. This amounted to no more than a conclusive statement without factual support, and is certainly more limited than Defendants are asserting in the Motion for Reconsideration.

The Court later clarified that it was only Plaintiffs' claims in Count I that were dismissed as to Defendants Fanning, Beattie, and Holland, and that the control person liability claims pursuant to § 20(a) of the Securities Exchange Act of 1934 in Count II remained. See Order dated April 6, 2018 [Doc. 47].

At oral argument, counsel for Defendants conceded that this question was no longer at issue and abandoned this as a basis for their interlocutory appeal.

Defendants make multiple arguments under this subject heading. The Court addresses each of them below.

It is telling that one of the primary cases relied upon by Defendants, FindWhat.com, is not cited by Defendants in their Motion to Dismiss. The first time Defendants cite this case is in their initial reply brief, and it is cited in the section related to the PSLRA safe harbor provision, not scienter. Defs.' Reply in Supp. of Their Mot. to Dismiss [Doc. 39] ("Defs.' Reply Br.") at 7.

The Mogensen court did consider position and access to information allegations and ultimately declined to find that they supported an inference of scienter. Id. Those allegations, however, centered on the vague reference to reports and the court found that "without any detail of what these reports contained, this cannot support an inference of scienter." Id. The allegations in this case are different. The position, responsibility, and access to information allegations include, inter alia , details that (1) Defendants attended meetings where delays in the project were specifically discussed, and (2) Defendants regularly observed first-hand the delays and lack of progress.

See Defs.' Recons. Br. at 11-12 ("Nonetheless, the Court found Day had the requisite scienter based on his (i) active monitoring and management; (ii) access to information based on his presence at Kemper; and (iii) signing SOX certifications. These allegations are simply not enough in this Circuit."), 16 ("Yet the Court found Anderson had the requisite scienter based on his (i) responsibilities and "hands-on" management; (ii) access to information at meetings; and (iii) access to information based on his presence at Kemper. As explained below, Plaintiffs' generalized allegations are insufficient to establish scienter as of the date of any of these statements."), 19 ("Nonetheless, the Court found that, just like Anderson, Huggins had scienter based on (i) his position and management role; (ii) access to information at meetings; and (iii) access to information based on his presence at Kemper.").

The Court notes that the language Defendants cite for the proposition that Plaintiffs' motive allegations are insufficient absent allegations of a "concrete and personal benefit to the individual benefits" is from the parenthetical to a Second Circuit case. See Synovus Fin. Corp., 2011 WL 13130185, at *26 (N.D. Ga. May 19, 2011) (quoting Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) ).

The Court has serious reservations that, inter alia , the issue identified by Defendants is one for which there are substantial grounds for difference of opinion, and doubts that resolution would substantially reduce the amount of litigation necessary on remand.

Given the Court's denial of Defendants' Motion for Certification for Interlocutory Appeal, its Motion to Stay Pending Appeal [Doc. 57] is DENIED AS MOOT.